**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WEST COAST LIFE INSURANCE COMPANY | C.A. No. _____ |
| Plaintiff, | |
| | **COMPLAINT FOR DECLATORY JUDGMENT** |
| v. | |
| WELLS FARGO BANK, N.A., as Securities Intermediary, and DINA LOSH | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT**

Plaintiff, West Coast Life Insurance Company ("West Coast Life"), files and asserts its Complaint against Defendants, Wells Fargo Bank, National Association, solely in its capacity as securities intermediary ("Wells Fargo"), and Dina Losh, and in support thereof, alleges as follows:

**PARTIES**

1.      West Coast Life is a life insurance company organized and existing under the laws of Nebraska with its principal place of business in Alabama.

2.      Upon information and belief, Wells Fargo is a national banking association with its principal place of business in Sioux Falls, South Dakota.  Wells Fargo is being named solely in its capacity as securities intermediary.

3.      Upon information and belief, Dina Losh is an adult individual who resides in and is a citizen of New York.

**JURISDICTION AND VENUE**

4.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between West Coast Life, a citizen of Nebraska and Alabama,

and the Defendants, citizens of South Dakota and New York, and because the amount in controversy exceeds $75,000.

5.         Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the District of New Jersey.

## FACTS COMMON TO ALL CLAIMS

**A.         The Application for and Issuance of the $1.5 Million Life Insurance Policy**

6.         On or about October 11, 2007, West Coast Life received an application for a $1.5 million universal life insurance policy insuring the life of Miriam Waldman.  A copy of the application is attached as Exhibit A.

7.         The application stated that the owner and beneficiary of the policy would be the Miriam Waldman 2007 Life Insurance Trust whose physical address was stated to be 12 Engleberg Terrace, Lakewood, New Jersey and whose trustee was stated to be Sandor Krauss, Esq.

8.         In connection with the application, it was represented to West Coast Life that the purpose of the policy would be estate planning.

9.         The application stated the proposed policy owner had not been advised regarding the transfer the policy's ownership to a life settlement company or another entity associated with stranger-owned or investment-owned life insurance.

10.        The application stated that the proposed policy owner had not contemplated transferring ownership of the policy to a life settlement company or another entity associated with stranger-owned or investment-owned life insurance.

11.        The application stated that premium financing was not involved in the case.

12.        The application consisted of various West Coast Life form documents that were used for New Jersey life insurance policies.

13.     The application purports to have been signed by Miriam Waldman, as the proposed insured, and Sandor Krauss, Esq., as trustee of the Miriam Waldman 2007 Life Insurance Trust, as the proposed policy owner, in Lakewood, New Jersey on October 9, 2007.

14.     By signing the application, these individuals represented that all statements and answers made therein were "full, complete, and true" to the best of their knowledge and belief.

15.     The application also purports to have been signed by Dina Losh, as the insurance professional, also in New Jersey on October 9, 2007.

16.     Ms. Losh was an insurance producer registered to conduct business in the state of New Jersey (license number 1090165).

17.     By signing the application, Ms. Losh certified that the answers given therein were "complete and true" to the best of her knowledge and belief and that she knew of nothing affecting the risk that was not set forth in her contract or the application and that she carefully explained each question before recording each answer and before the application was signed.

18.     Thus, in completing the application, the signatories knew that they were required to provide truthful, accurate, and honest responses to the questions presented.  Further, they knew that West Coast Life would rely upon the statements recorded in the application in determining whether to issue a policy with the face amount requested, or whether to issue a policy at all.

19.     In reliance upon the representations contained in the application documents and other documents and information submitted to West Coast Life in connection with the applications, West Coast Life issued a New Jersey life insurance policy with a $1.5 million death benefit (policy number ZU5000695) (the "Policy") with a policy date of October 18, 2007.

20.     On information and belief, the Policy was delivered to the Miriam Waldman 2007 Insurance Trust at its Lakewood, New Jersey address, and the Policy was accepted by the Miriam Waldman 2007 Insurance Trust, as owner, also at its Lakewood, New Jersey address.

21.     An initial premium payment of $54,000 was made to West Coast Life in the form of a check dated October 30, 2007 and drawn from a Wachovia Bank account in the name of the Miriam Waldman 2007 Life Insurance Trust, which check was signed by its trustee Sandor Krauss. West Coast Life received this initial premium payment on or about November 7, 2007.

22.     On January 4, 2011, West Coast Life received and processed a request to transfer the ownership and beneficiary of the Policy to Wells Fargo, N.A., as securities intermediary, for an undisclosed investor.

23.     Upon information and belief, Ms. Waldman passed away on January 20, 2020, and Wells Fargo subsequently submitted a claim for the Policy's death benefit on behalf of an unidentified investor (which undisclosed investor may or may not have been the same undisclosed investor on whose behalf Wells Fargo was serving as securities intermediary previously).

**B.      The Policy was Likely Procured as Part of an Illegal Wagering Scam to Gamble on the Life of Ms. Waldman**

24.     Following receipt of notice of Ms. Waldman's death, West Coast Life commenced a review of the Policy and has determined, upon information and belief, that it was likely meant as an illegal wager on the life of Ms. Waldman.

25.     West Coast Life has further determined, upon information and belief, that the Policy lacked an insurable interest prior to and at its inception and that any appearance of insurable interest was superficial only and was in reality a complete and total sham designed to conceal the true wagering nature of the purported Policy.

26.     West Coast Life has further determined, upon information and belief, that the purpose of the Policy was not estate planning, but was rather to create a policy for investors without any insurable interest in the life of Ms. Waldman.

27.     West Coast Life has further determined, upon information and belief, that the source of the funds for the initial premium payment on the Policy was not Ms. Waldman or any person or valid entity possessing an insurable interest in her life, but rather that these funds were either provided to the Miriam Waldman 2007 Insurance Trust by a third-party with no insurable interest in Ms. Waldman's life or were provided by Ms. Waldman with the understanding that she would soon afterwards receive reimbursement.  Upon information and belief, at no point was Ms. Waldman at risk that her own funds would be used to pay premiums on this Policy.

28.      West Coast Life has further determined, upon information and belief, that a so-called non-recourse premium financing loan was used to fund and pay premiums on the Policy, which so-called loan was designed—not to enable Ms. Waldman to obtain life insurance for herself or her family—but rather to generate a policy for the benefit of investors without insurable interest in the insured.  Upon information and belief, West Coast Life has further determined that the non-recourse loan was issued here as part of a much larger stranger-originated life insurance (STOLI) program that created hundreds of policies lacking insurable interest for investors.

29.     None of this was disclosed to West Coast Life.  Instead, upon information and belief, to disguise the true wagering nature of the Policy, the stranger entities acted together to generate the Policy knowingly and intentionally misrepresenting material information and affirmatively concealing material information from West Coast Life so as to intentionally mislead and induce West Coast Life into issuing a policy that it otherwise would have rejected.

30.     Upon information and belief, and among other things, this included:

a. Falsely representing that premium financing was not involved.  In reality, upon information and belief, premiums were funded by way of a non-recourse premium finance loan program that was designed to create policies for the benefit of investors on the secondary market.

b. Falsely representing that the purpose of the Policy was estate planning.  In reality, upon information and belief, the purpose of the Policy at inception was to transfer it to investors, who were seeking to use it to illegally wager on Ms. Waldman's life.

c. Falsely representing that the Miriam Waldman 2007 Insurance Trust was not contemplating and/or did not intend to transfer the Policy to investors.  In reality, upon information and belief, this is exactly what was contemplated and intended at inception.

d. Falsely declaring that the application's statements and answers were full, complete, and true to the best of the signatories' knowledge.  In reality, the stranger entities acting together to generate the Policy knew and intended for the statements and answers to be false and misleading, and otherwise concealed the truth from West Coast Life.

31.    In addition to the above-mentioned statements, representations, and omissions made to mislead and induce West Coast Life to issue the Policy, the stranger entities acting together to generate the Policy took steps after issuance of the Policy so as to further and continually conceal the true wagering nature of the transaction.

32.    Upon information and belief, and among other things, this included:

a. Maintaining the illusion that the Miriam Waldman 2007 Insurance Trust was established by Ms. Waldman as a valid estate planning mechanism and that the Policy was being held by the trust for those purposes, when in fact the trust was created solely as a mechanism to allow stranger entities and its associates to obtain ownership of the Policy.

b.   Maintaining the illusion, that the Policy had been procured for valid estate planning purposes; when, in reality, it was procured for the benefit of investors.

## FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT – ILLEGAL HUMAN LIFE WAGERING CONTRACT
## (AGAINST DEFENDANT WELLS FARGO, AS SECURITIES INTERMEDIARY)

33.     West Coast Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

34.     The Policy application utilized New Jersey forms; the application was signed by the insured, the owner, and the insurance professional in New Jersey; the Policy illustration was prepared on New Jersey forms; the Policy was printed on New Jersey forms; the Policy's owner at issuance was a New Jersey trust with a New Jersey address; and upon information and belief, the Policy was delivered to and accepted by that New Jersey Trust at its address in Lakewood, New Jersey.  The Policy is governed by New Jersey law.

35.     The New Jersey Supreme Court recently held that, under New Jersey law, where a person merely lends his or her life to a stranger to cloak what is in reality a wager on human life, that policy is void *ab initio*.  *Sun Life Assur. Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 841 (N.J. 2019).

36.     Here, upon information and belief, stranger investors used Ms. Waldman as a mere cloak to make it look like the Policy was being procured for the benefit of Ms. Waldman's estate when, in reality, the Policy was being procured by investors without any insurable interest in Ms. Waldman's life as a wager for the benefit of those investors.

37.     Thus, West Coast Life seeks, and is entitled to, a declaratory judgment that the Policy was an illegal wagering contract that violated New Jersey law, thus rendering the Policy void *ab initio*, meaning that the Policy never came into existence and no death benefit is owed.

## SECOND CAUSE OF ACTION

## DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

## (AGAINST DEFENDANT WELLS FARGO, AS SECURITIES INTERMEDIARY)

38.     West Coast Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

39.     Under New Jersey law, a policy not supported by an insurable interest at its inception is void *ab initio*.  *Id.*

40.     As set forth above, the Policy was applied for and issued at the behest of individuals or entities—with no insurable interest in the life of the insured—who procured the Policy for the purpose of benefitting stranger investors in the life insurance secondary market. Accordingly, the Policy is void *ab initio*.

41.     Therefore, West Coast Life seeks, and is entitled to, a declaratory judgment that the Policy lacked insurable interest because it was procured by and for the benefit of strangers without any insurable interest under New Jersey law.

## THIRD CAUSE OF ACTION

## FRAUDLENT INDUCEMENT

## (AGAINST DEFENDANT DINA LOSH)

42.     West Coast Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

43.	As set forth above, the Policy was procured through a variety of knowingly false statements and representations, as well as intentional omissions of material fact each of which was knowingly made (or omitted) to induce West Coast Life to issue a policy it otherwise would not have issued.  Defendant Dina Losh made the intentional misrepresentations and omissions set forth in this complaint, including but not limited to the following:

a.	Representing that the purpose of the Policy was estate planning.

b.	Representing that the prospective policy owner had not been advised regarding the transfer of the sought-after policy to investors on the secondary market.

c.	Representing that the prospective policy owner had not contemplated transferring the sought-after policy to investors on the secondary market.

44.	Ms. Losh either knew, believed, or acted with reckless indifference to the fact that each of the above statements was false, or intentionally or recklessly omitted statements known to be true that should have been disclosed, in an effort to induce West Coast Life into issuing a life insurance Policy that, but for these representations and omissions, would not have been issued.

45.	Acting in reliance upon these statements, West Coast Life did in fact issue the Policy, and in doing so incurred costs and other liabilities that it would not have incurred but for the issuance of the Policy, including, but not limited to: (1) commissions paid to Ms. Losh; (2) costs of administering the Policy; (3) taxes paid upon receipt of premiums on the Policy; and (4) the death benefit of the Policy, if it is ultimately deemed to be valid.  The amount of these damages will be proved at trial.

46.	Due to the nature of the misrepresentations and concealment by Ms. Losh and others, West Coast Life did not discover the fraud until recently.

## FOURTH CAUSE OF ACTION

## FRAUD

## (AGAINST DEFENDANT DINA LOSH)

47.     West Coast Life hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

48.     As set forth above, the true wagering nature of the Policy was continually concealed from West Coast Life through a variety of acts.  These included, but were not limited to, disguising the true payor of the premiums, disguising the purpose of the Policy, disguising the pre-issuance intent to transfer the Policy to investors, and disguising the pre-issuance involvement of investors.  Each such act was a separate and independent act of fraud.  Ms. Losh made, or caused to be made through others acting under her direct control, the intentional ongoing misrepresentations and omissions set forth in this complaint.

49.     West Coast Life reasonably relied on said misrepresentations and omissions and, as a proximate result, suffered damages, the nature and amount of which will be proved at trial.

50.     Due to the nature of the ongoing independent misrepresentations and concealment, West Coast did not discover the fraud until recently.

## FIFTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENATION

## (AGAINST DEFENDANT DINA LOSH)

51.     West Coast Life hereby incorporated by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

52.     Ms. Losh had a duty to provide accurate information to West Coast Life in connection with the application for and issuance of the Policy.

53.     As set forth above, and specifically in paragraph 43, Ms. Losh provided false information to West Coast Life and concealed other material information from West Coast Life.

54.     Ms. Losh failed to exercise reasonable care in ascertaining whether the information provided to West Coast Life was false.

55.     West Coast Life reasonably relied on said misrepresentations and omissions and, as a proximate result, suffered damages, the nature and amount of which will be proved at trial.

56.     Due to the nature of the ongoing misrepresentation and concealment, West Coast Life did not discover the truth until recently.

**SIXTH CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(AGAINST DEFENDANT DINA LOSH)**

57.     West Coast Life hereby incorporated by reference each and every allegation contained in the preceding paragraphs as if set forth herein at length.

58.     Upon information and belief, Ms. Losh had insurance contracts with multiple insurance companies that allowed her to place insurance business with those companies.  West Coast Life had an insurance agent contract with Ms. Losh that allowed her to place insurance business with West Coast Life.

59.     Ms. Losh breached that contract through the acts and omissions set forth in detail in this complaint.

60.     West Coast Life has suffered damages as a direct and proximate result of these contractual breaches, the nature and amount of which will be proved at trial.

61.     As a result of Ms. Losh's ongoing misrepresentations and concealment set forth above, West Coast Life did not discover the truth until recently.

WHEREFORE, West Coast Life respectfully requests the entry of an Order by this Court as follows:

a.  Declaring that the Policy is void *ab initio* due to it having been procured as a wagering contract on the life of Ms. Waldman;

b.  Declaring that the Policy is void *ab initio* due to it having been procured without a valid insurable interest at inception;

c.  Declaring that because the Policy is void *ab initio* it never existed;

d.  Declaring the because the Policy is void *ab initio* the Court will leave the parties to this illegal contract as it finds them, thus permitting West Coast Life to retain the premiums paid on the Policy, or, in the alternative, declaring that West Coast Life may retain some or all of the premiums paid on the Policy to effectuate an offset with respect to West Coast Life's costs and losses associated with the Policy;

e.  Finding Defendant Dina Losh liable for compensatory, exemplary, and punitive damages by reason of her actions and omissions set forth herein, and awarding West Coast Life the same;

f.  Awarding West Coast Life attorneys' fees and costs associated with bringing this lawsuit, as determined by the Court; and

g.  Awarding West Coast Life any further relief this court deems appropriate.


Dated: April 15, 2020                    COZEN O'CONNOR


                                         /s/ Michael J. Broadbent
                                         Michael J. Broadbent, Esq. (043992010)
                                         Michael J. Miller, Esq. (032821991)
                                         Joseph M. Kelleher, Esq. (040602009)
                                         Chase A. Howard, Esq. (*pro hac vice to be filed*)


12

COZEN O'CONNOR
One Liberty Plaza
1650 Market Street, Suite 2800
Philadelphia, PA  19103
Phone: 215-665-2000
Facsimile: 215-372-2349

*Attorneys for Plaintiff*