<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WEST COAST LIFE INSURANCE COMPANY,<br><br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., as Securities Intermediary, and DINA LOSH,<br><br>Defendants. | Case No. 3:20-cv-04350 (BRM) (DEA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Wells Fargo Bank, N.A.'s ("Defendant")[1] Motion to Dismiss Plaintiff West Coast Life Insurance Company's ("Plaintiff") Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 8.) Defendant moves in the alternative to transfer this action to the Eastern District of New York pursuant to 28 U.S.C. § 1404(a). (*Id.*) Plaintiff opposes the Motion (ECF No. 14), and Defendant filed a Reply (ECF No. 16). Having reviewed the filings submitted in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), and for the reasons set forth below, Defendant's Motion to Dismiss and Alternative Motion to Transfer are **DENIED**.

## I. BACKGROUND

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the

---

[1] Defendant Dina Losh did not move to dismiss and is not included in the definition of Defendant for the purpose of this motion.

Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Plaintiff is a life insurance company organized and existing under the laws of Nebraska with its principal place of business in Alabama. (ECF No. 1 ¶ 1.) Defendant is a national banking association with its principal place of business in Sioux Falls, South Dakota. (*Id.* ¶ 2.) Dina Losh ("Losh"), a named defendant, resides in and is a citizen of New York. (*Id.* ¶ 3.)

On October 11, 2007, Plaintiff received an application for a $1.5 million universal life insurance policy insuring the life of Miriam Waldman ("Ms. Waldman"). (*Id.* ¶ 6.) The application stated the owner and beneficiary of the policy was the Waldman 2007 Life Insurance Trust (the "Trust") located at 12 Engleberg Terrace in Lakewood, New Jersey. (*Id.* ¶ 7.) The stated trustee was Sandor Krauss, Esq. ("Krauss"). (*Id.*) The purpose of the policy was represented as estate planning. (*Id.* ¶ 8.) The application also stated that:

- The proposed policy owner had not been advised regarding the transfer of the policy's ownership to a life settlement company or another entity associated with investment-owned life insurance;

- Premium financing was not involved in the case;

- The application consisted of various West Coast Life form documents used for New Jersey life insurance policies.

(*Id.* ¶¶ 10–12.) The application purports to have been signed by Ms. Waldman, as the proposed insured, Krauss, as trustee of the Trust, and Losh, as the insurance professional. (*Id.* ¶¶ 13–15.)

These three parties signed the application in New Jersey on October 9, 2007. (*See id.*) Losh, at the time of signing the application, was an insurance producer registered to conduct business in the state of New Jersey. (*Id.* ¶ 16.) In completing the application, the signatories knew they were required to provide truthful, accurate, and honest answers to the questions presented to them in the application. (*Id.* ¶ 18.) The signatories also knew that Plaintiff would rely on the statements recorded in the application in determining whether to issue a policy. (*Id.*) Plaintiff issued a New Jersey life insurance policy with a $1.5 million death benefit (the "Policy") on October 18, 2007. (*Id.* ¶ 19.) The Policy was delivered to and accepted by the Trust at its Lakewood, New Jersey address. (*Id.* ¶ 20.) On October 30, 2007, the Trust made an initial payment of $54,000 to West Coast Life by check, which was signed by its trustee, Krauss. (*Id.* ¶ 21.) On November 7, 2007, Plaintiff received the check. (*Id.*)

On January 4, 2011, Plaintiff received and processed a request to transfer ownership of the Policy to Defendant, as Securities Intermediary, for an undisclosed investor. (*Id.* ¶ 22.) On January 20, 2020, Ms. Waldman passed away and Defendant submitted a claim for the Policy's benefit on behalf of an unidentified investor. (*Id.* ¶ 23.)

After receiving notice of Ms. Waldman's death, Plaintiff commenced a review of the Policy and determined, upon information and belief, that it was likely meant as an illegal wager on the life of Ms. Waldman. (*Id.* ¶ 24.) Plaintiff has further determined that the Policy lacked an insurable interest prior to and at its inception and that any appearance of insurable interest was superficial, designed to conceal the true wagering nature of the purported Policy. (*Id.* ¶ 25.) Plaintiff also alleges the purpose of the Policy was "to create a policy or investors without any insurable interest in the life of Ms. Waldman," not estate planning. (*Id.* ¶ 26.) Additionally, Plaintiff alleges Ms. Waldman or any person or entity with an insurable interest on her life was not the source of funds

for the initial payment to Plaintiff. (*Id.* ¶ 27.) Instead, according to Plaintiff, these funds were provided to the Trust "by a third-party with no insurable interest in Ms. Waldman's life or were provided by Ms. Waldman with the understanding that she would soon afterwards receive reimbursement." (*Id.*) Plaintiff claims that "at no point was Ms. Waldman at risk that her own funds would be used to pay premiums on [the] Policy." (*Id.*) Plaintiff further alleges "that a so-called non-recourse premium financing loan was used to fund and pay premiums on the Policy, which was designed . . . to generate a policy for the benefit of investors without insurable interest in the insured." (*Id.* ¶ 28.) This loan, according to Plaintiff, was issued "as part of a much larger stranger-originated life insurance (STOLI) program that created hundreds of policies lacking insurable interest for investors." (*Id.*) Plaintiff alleges this information was not disclosed to it, as "the stranger entities acted together to generate the Policy knowingly and intentionally misrepresenting material information and affirmatively concealing material information from [Plaintiff]" to mislead and induce Plaintiff "into issuing a policy that it otherwise would have rejected." (*Id.* ¶ 29.) These misrepresentations included:

- Falsely representing that premium financing was not involved;

- Falsely representing that the purpose of the Policy was estate planning;

- Falsely representing that the Trust was not contemplating and/or did not intend to transfer the Policy to investors; and

- Falsely declaring that the application's statements and answers were full, complete, and true to the best of the signatories' knowledge.

(*Id.* ¶ 30.) In addition to these misrepresentations, Plaintiff alleges "the stranger entities acting together to generate the Policy took steps after issuance of the Policy as to further and continually conceal the true wagering nature of the transaction." (*Id.* ¶ 31.) This included, according to

Plaintiff, maintaining the illusion that: the Trust was established by Ms. Waldman as a valid estate planning mechanism and was being held by the trust for those purposes; and the Policy had been procured for valid estate planning purposes. (*Id.* ¶ 32.)

On April 15, 2020, Plaintiff brought this action seeking declaratory judgment (for both illegal human life wagering contract and lack of insurable interest) against Defendant Wells Fargo, and asserting claims for fraudulent inducement, fraud, negligent misrepresentation, and breach of contract against Defendant Losh.[2] (*Id.* ¶¶ 33–61.) On June 3, 2020, Defendant moved to dismiss the Complaint for lack of jurisdiction, or, in the alternative, to transfer venue to the Eastern District of New York. (ECF No. 8.) On July 10, 2020, Plaintiff filed its Opposition (ECF No. 14), and on July 27, 2020, Defendant filed its Reply. (ECF No. 16.)

## II.   LEGAL STANDARD

### A.   Rule 12(b)(2) Standard

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86–87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Pursuant to Federal Rule of Civil Procedure 4(e), a district court may exercise personal jurisdiction according to the law of the state where it

---

[2] Defendant Wells Fargo filed its Motion to Dismiss in response to the two counts against it—those seeking declaratory judgment on the life insurance policy. (*See* ECF No. 8.) Defendant Losh did not join in Defendant Wells Fargo's Motion to Dismiss, so the claims for fraudulent inducement, fraud, negligent misrepresentation, and breach of contract were not briefed by the parties. (*See generally* ECF Nos. 8-1, 14, 16.) Therefore, the Court will not address those claims in this Opinion.

sits. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Court Rule 4:4-4(c)). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014) (citing *Int'l Shoe Co.*, 326 U.S. at 317); *see also Metcalfe*, 566 F.3d at 334 ("Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."). Specific jurisdiction exists when the defendant's activities in the forum state: (1) were "continuous and systematic" and (2) gave rise to the plaintiff's claims. *Daimler*, 571 U.S. at 119. General jurisdiction requires only continuous and systematic contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

"Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *Pinker*, 292 F.3d at 368.) The defendant must have "'purposefully directed' his activities at residents of the forum and the litigation [must] result[] from alleged injuries that 'arise out of or

6

relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Metcalfe*, 566 F.3d at 334. Further, the Due Process Clause of the Fifth Amendment requires that a "defendant has constitutionally sufficient 'minimum contacts' with the forum" and that "the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Pinker*, 292 F.3d at 369 (citing *Burger King Corp.*, 471 U.S. at 474 and *Int'l Shoe Co.*, 326 U.S. at 316).

While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*.") (emphasis added). "It may be that whatever special rule exists permitting continuous and systematic contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990).

## III.   DECISION

Defendant contends this Court should grant its Motion to Dismiss because the Court lacks personal jurisdiction over it. (*See* ECF No. 8-1.) Alternatively, Defendant contends the Court should transfer this action to the Eastern District of New York under 28 U.S.C. § 1404(a). (*See id.*) This Court addresses each argument in turn.

### A.   Specific Personal Jurisdiction[3]

Because this Court has not held an evidentiary hearing, Plaintiff only bears the burden of

---

[3] Plaintiff does not raise any arguments in favor of general jurisdiction in its brief. (*See generally* ECF No. 14.) Accordingly, the Court will only consider the parties' arguments on specific personal jurisdiction.

proving a prima facie case of personal jurisdiction over Defendant. *See Metcalfe*, 566 F.3d at 330. To establish a prima facie case of specific personal jurisdiction, Plaintiff must show (1) Defendant "purposefully directed [its] activities at [New Jersey];" (2) Plaintiff's claims "arise out of or relate to at least one of those activities;" and (3) "the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Conner v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (internal quotations and citations omitted). "[P]laintiff may not rely on bare pleadings alone" in such a showing, "but must come forward with affidavits and other competent evidence establishing with reasonable particularity the nature and extent of [D]efendant's contacts with [New Jersey]." *See Sadek v. Horovitz*, Civ. A. No. 10-2187, 2013 WL 12149254, at *6 (D.N.J. Mar. 28, 2013) (citing *Metcalfe*, 566 F.3d at 330).

### i. Minimum Contacts

Regarding the first prong of this analysis, Defendant argues that Plaintiff "has done nothing in the state relating to the Policy or the events that are the subject of the Complaint; in fact, [Defendant] only became involved with the Policy after the events described in the Complaint took place." (ECF No. 8-1 at 18–19.) Further, Defendant argues "the allegations in [Plaintiff's] Complaint and other relevant evidence offered . . . demonstrate that [Defendant] does not have the contacts with New Jersey that are necessary to support the exercise of personal jurisdiction." (*Id.* at 19.) Specifically, Defendant contends "the Waldman Policy was issued to the Trust, which was created under and subject to New York law in New York, as owner and beneficiary." (*Id.* at 21.) Defendant notes it holds the Policy "on behalf of its current client, which is not based in New Jersey and has no connection to New Jersey, and all communications between [Defendant] and the client have occurred outside the state of New Jersey." (ECF No. 8-2 ¶ 5 (Declaration of Christopher L. Young).) The record indicates "[a]ll of the actions performed by [Defendant] in connection with

the Policy were performed from offices located in a state other than the State of New Jersey." (*Id.* ¶ 6.) Defendant has transmitted premium payments to Plaintiff under the Policy, but these payments "have all been transmitted by [Defendant] from a bank account established and maintained in a state other than the State of New Jersey to [Plaintiff] in Birmingham, Alabama." (*Id.* ¶ 7.) Defendant has also received documents related to the Policy from Plaintiff, but "all of these documents have been received by [Defendant] at offices" located outside of New Jersey. (*Id.* ¶ 8.) Defendant also clarifies it "has not performed any action in or from New Jersey in connection with the Policy and has not directed any action into New Jersey in connection with the Policy." (*Id.* ¶ 9.) Based on these facts, Defendant argues Plaintiff cannot meet its burden of establishing that its claims against Defendant "proximately arise from an act performed by [Defendant] in New Jersey." (ECF No. 8-1 at 23.)

Plaintiff argues Defendant "purposefully directed its activities at New Jersey by knowingly acquiring a New Jersey policy." (ECF No. 14 at 15.) Plaintiff analogizes this case to *Lincoln Benefit Life Co. v. Wells Fargo Bank, N.A.*, Civ. A. No. 17-02905, 2017 WL 4953904 (D.N.J. Nov. 1, 2017), where the Court disagreed with Wells Fargo when it argued, just as here, "it was not subject to personal jurisdiction in New Jersey because it had no contacts with the state." (*Id.* at 14.) In that case, Plaintiffs argue, "the Court analyzed the application and [life insurance] policy for indications that put [Defendant] on notice that it was dealing with a New Jersey policy and could thus anticipate being haled into New Jersey court." (*Id.* (citing *Lincoln Benefit*, 2017 WL 4953904, at *6–7, *10–11).) "There, as here, the documents showed that the insured, broker, and trustee signed the application in New Jersey and that the policy was subject to New Jersey law." (*Id.* (citing *Lincoln Benefit*, 2017 WL 6539244, at *6–7, *10–11).) Plaintiff points to several portions of the record to argue "it cannot be reasonably disputed that the Policy is a New Jersey

life insurance policy." (*Id.* at 15.) Additionally, Plaintiff points out that Defendant's "argument that the Policy is somehow a New York Policy" ignores indisputable facts contained in the record. (*Id.* at 16.)  According to Plaintiff, Defendant improperly "focuses on the fact that Ms. Waldman was a resident of New York at the time the Policy was issued," even though she died as a resident of New Jersey, "that Ms. Waldman may have signed the (irrelevant) medical portion of the application in New York, and that the broker and trustee were residents of New York." (*Id.*) Further, Plaintiff cites several parts of the record to contend Defendant cannot argue it lacked notice of the Policy being a New Jersey policy. (*Id.* at 18–19.)

The court will undertake a review of *Lincoln Benefit* and utilize its analysis to determine, in light of the evidence[4] presented, whether Defendant has sufficient contacts with New Jersey. *Lincoln Benefit* concerned the same facts and issues as the matter before the Court. There, the plaintiff sought a declaratory judgment to find a life insurance policy taken out by Ruth Klugman, the decedent, void *ab initio* for lack of an insurable interest. 2017 WL 4953904, at *1. The life insurance policy, as here, was owned by a trust in the decedent's name, the Klugman Trust. *Id.* Both Wells Fargo and the Klugman Trust were named as defendants. Decedent's son-in-law was the trustee of the Klugman Trust, and the trust was located in New York. *Id.* Three years after the policy was created, it was transferred to Wells Fargo. *Id.* Because of this transfer, Wells Fargo became the owner and primary beneficiary of the policy. *Id.*

The Trust argued it had no contacts with New Jersey because the Trustee and situs of the Trust were located in New York. *Id.* at *3. The court clarified neither of these facts negated the Trust's contacts with New Jersey "for the purposes of executing the [policy's] application

---

[4] The Court at this stage of the litigation must "assum[e] the sworn allegations that appear in . . . [Plaintiff's] affidavit and the other documentary evidence on record are true and constru[e] factual disputes in [his] favor." *Metcalfe*, 566 F.3d at 331.

materials." *Id.* Additionally, the court noted the "center of [the] dispute [was] the Decedent's life insurance policy" and found "the state in which the policy was signed, and thus where [the] cause of action initially arose, is dispositive." *Id.* (citing *Remick*, 238 F. 3d at 255; *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 649 A.2d 379, 387 (N.J. 1994)). Further, the court held "[d]ocuments connected to New York preceding or following the policy, such as the medical exam or cover page, are not relevant for the purposes of personal jurisdiction." *Id.* The court found the Trust made purposeful contact with New Jersey when the Trustee, decedent, and insurance agent all signed the policy application in Lakewood, New Jersey, especially when considering the policy was governed by New Jersey law. (*Id.*)

Here, Plaintiff attached the October Application for Ms. Waldman's $1.5 million life insurance policy to its Opposition. (*See generally* ECF No. 14-13.) The application appears to be printed on New Jersey forms since an "NJ" is found on the bottom left of each page. (*See id.* at 1–7.) The application also lists the Trust as the owner of the policy, located at "12 Engleberg Terrace, Lakewood, NJ 08701." (*Id.* at 3.) Importantly, the application was signed in Lakewood, New Jersey on October 9, 2007, by Krauss, Ms. Waldman, and Losh. (*Id.* at 4–5.) Plaintiff also attached a "Declaration of the Trust" which was received in connection with the Trust Application and states "[t]his Agreement shall be governed in accordance with New Jersey Law and shall be construed in accordance therewith." (ECF No. 14-20 at 13–14.)

Defendant provides a nearly identical Trust Declaration as an attachment to its Motion to Dismiss. (*See* ECF No. 8-7.) However, the document contains one key difference: Article Fourteen of Defendant's Trust Declaration version provides "[t]his Agreement shall be governed in accordance with New York Law." (*Id.* at 13–14.) Plaintiff argues Defendant's version was altered after the Trust Declaration's execution because while all Article titles of Plaintiff's version are

11

underlined, Article Fourteen of Defendant's version is captioned "New York Law" without any underlining. (*Compare* ECF No. 14-20 at 13–14 *with* ECF No. 8-7 at 13–14.) Further, although Defendant's version states it is governed by New York law, the declaration still makes references to New Jersey. For example, Article Four of both versions, pertaining to trust distributions, states that if a beneficiary dies without descendants, the trustee shall distribute the assets as if the beneficiary "died . . . intestate and a resident of the State of New Jersey." (*Compare* ECF No. 14-20 at 6 *with* ECF No. 8-7 at 6.) As Plaintiff points out in its brief "the person who did the altering appears to have forgotten—not only to underline the Article 14 heading—but also to likewise change the New Jersey reference to New York in Article 4." (ECF No. 14 at 7.)

In a declaration attached to Defendant's Reply, Krauss states he does "not specifically recall signing the application for the Policy" and does "not recall whether [he] signed the document while in the State of New Jersey" but does recognize his signature on the document. (ECF No. 16-1 ¶ 4 (Sandor Krauss Declaration).) He also declares he did not sign in the presence of Ms. Waldman, nor has he ever met her. (*Id.*) Lastly, Defendant emphasizes Part II of the policy application, the medical portion, was signed in New York and that the situs of the Trust was in New York. (ECF No. 8-1 at 5.)

In light of *Lincoln Benefit*, the Court finds Defendant had sufficient minimum contacts with New Jersey. Like *Lincoln Benefit*, the trustee, life insurance agent, and decedent all signed the policy application in New Jersey. (ECF No. 1 ¶¶ 13–15; ECF No. 14-13 at 4–5.) Additionally, the fact Krauss, as trustee, and the situs of the trust are located in New York "do not negate [Defendant's] contacts with New Jersey for the purposes of executing the application materials." *Lincoln Benefit*, 2017 WL 4953904, at *3. Further, the fact the medical portion of the policy was signed in New York is "not relevant for the purposes of personal jurisdiction." *Id.* And even though

12

Krauss declares he never met Ms. Waldman, the New Jersey trust application indicates he, Losh, and Ms. Waldman all signed the application in New Jersey. (ECF No 14-13 at 3, 4, 5, 10, 11.)

The only remaining issue is whether New York or New Jersey law governs the policy due to the differing versions of the Declaration of Trust provided by Plaintiff and Defendant. "In considering a motion to dismiss on the basis of affidavits, a District Court must resolve all material factual disputes in favor of the plaintiffs." *Wellness Publ'g v. Barefoot*, 128 F. App'x 266, 268 (3d Cir. 2005); *see also Metcalfe*, 566 F.3d at 530 (same). Here, Plaintiff contends that Defendant altered the Declaration of Trust to reflect it was governed by New York law. (*Compare* ECF No. 14-20 at 13–14 *with* ECF No. 8-7 at 13–14.) Without deciding whether Defendant altered the Declaration of Trust and resolving the disparity between the two documents in favor of Plaintiff, the Court finds the Declaration of Trust was governed by New Jersey law.

### ii. Relatedness Requirement

Plaintiff contends the second prong, the "relatedness requirement," is satisfied because its "Complaint—which seeks a declaration that [Plaintiff] does not need to pay the Policy's death benefit—arises directly out of, and plainly relates to, [Defendant's] reaching into New Jersey to obtain and submit a New Jersey death certificate" as part of its death claim submission. (*Id.* at 22.) Although the Third Circuit has not adopted a bright-line test for the relatedness requirement, the Circuit has held satisfying it requires a closer causal connection than but-for causation. *HS Real Co., LLC v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013) Here, Defendant's contacts with New Jersey are relevant to the merits of each of Plaintiff's claims, and Plaintiff has shown a prima facie case of minimum contacts. *See Sandy Lane*, 496 F.3d at 317, 320.

### iii. Fair Play and Substantial Justice

Regarding the third prong, fair play and substantial justice, the burden is on Defendant to

"present a *compelling* case that the presence of some other considerations would render jurisdiction unreasonable" because Plaintiff has made a prima facie case of minimum contacts. *Id.* at 324 (emphasis added) (quoting *Burger King Corp.*, 471 U.S. at 477). Factors a court should consider when balancing jurisdictional reasonableness include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies." *Id.*

Defendant argues Plaintiff cannot establish the first two requirements of personal jurisdiction, so Defendant makes no argument regarding fair play and substantial justice in its briefs accompanying its Motion to Dismiss and Reply. (*See generally* ECF No. 8-1; ECF No. 16.) Alternatively, Plaintiff argues this Court's exercise of personal jurisdiction over Defendant would not offend the traditional notions of fair play and substantial justice. (*Id.* at 27.) It contends "litigating this case in New Jersey will not burden [Defendant] in any meaningful way," that "New Jersey has a strong interest in having the validity of a New Jersey policy litigated in New Jersey," and that Plaintiff has the right to choose its forum. (*Id.* at 28–29.) Lastly, Plaintiff contends "the interstate judicial system's interest in efficiency will be promoted by having this case litigated in New Jersey because New Jersey law plainly governs [the Policy]" and "the states' shared interest in furthering social policies will be advanced by having [the case] litigated in New Jersey." (*Id.* at 30.)

Courts in this district routinely find jurisdiction proper when a plaintiff satisfies the first two prongs of the specific personal jurisdiction analysis and the defendant offers no argument on the third prong. *Batinkoff v. Church & Dwight Co.*, Civ. A. No. 318-16388, 2020 WL 1527957, at *13 (D.N.J. Mar. 31, 2020) (finding specific personal jurisdiction over defendant when plaintiff

14

satisfied the first two prongs and defendant did "not present a compelling case of unreasonableness" because he "ma[de] no argument as to jurisdictional reasonableness"); *Varela v. Pee Dee Med. Collection Servs.*, Civ. A. No. 1817196, 2019 WL 2083297, at *3 (D.N.J. May 6, 2019), *report and recommendation adopted*, Civ. A. No. 1817196, 2019 WL 2210802 (D.N.J. May 21, 2019) (same); *Blystra v. Fiber Tech Grp., Inc.*, Civ. A. No. 00-4593, 2005 WL 2807361, at *6 (D.N.J. Oct. 25, 2005) (same). Accordingly, because Defendant has not offered any argument under this prong, the Court finds it has not presented a "compelling case." *See Sandy Lane*, 496 F.3d at 324.

Plaintiff has established all three prongs of the specific personal jurisdiction test.[5] *See Sandy Lane*, 496 F.3d at 317. Accordingly, Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) is **DENIED**.[6]

### B.    Transfer Under 28 U.S.C. § 1404(a)

Having denied Defendant's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), the Court turns to Defendant's Alternative Motion to Transfer this action to the Eastern District of New York under 28 U.S.C. § 1404(a).

Section 1404(a) provides, "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In deciding a motion to transfer, the Court must first determine whether the alternative forum is a

---

[5] Plaintiff also argues Defendant is subject to personal jurisdiction as the successor in interest to the Trust. (ECF No. 14 at 25–27.) However, the Court will not address that argument because it has already found there is personal jurisdiction over Defendant.

[6] Because the Court finds that it has specific jurisdiction over the pending claims, the Court need not address whether general jurisdiction exists.

proper venue. *Fernandes v. Deutsche Bank Nat'l Trust Co.*, 157 F. Supp. 3d 383, 389 (D.N.J. 2015); *see* 28 U.S.C. § 1391. Venue is appropriate in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). When a plaintiff has laid a proper venue, "[t]he decision whether to transfer falls in the sound discretion of the trial court." *Park Inn Int'l, L.L.C. v. Mody Enters., Inc.*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000). However, "the burden of establishing the need for transfer . . . rests with the movant." *Jumara v. State Farm Ins.*, 55 F.3d 873, 879 (3d Cir. 1995).

The Court must consider three factors when determining whether to grant a transfer under Section 1404(a): (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 526 (D.N.J. 2000) (citing 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879). These factors are not exclusive and must be applied through a "flexible and individualized analysis . . . made on the unique facts presented in each case." *Id.* at 527 (citations omitted). The first two factors have been refined into a non-exhaustive list of private and public interests that courts should consider. *See Jumara*, 55 F.3d at 879–80.

The private interests a court should consider include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records

16

(similarly limited to the extent that the files could not be produced in the alternative forum). *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (citing *Jumara*, 55 F.3d at 879).

The public interests a court should consider include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.* (citing *Jumara*, 55 F.3d at 879–80).

First, Defendant argues venue is appropriate in the Eastern District of New York since it is subject to jurisdiction there due to the pending lawsuit in the Eastern District of New York, the New York residency and citizenship of Losh, and the Policy, which was solicited, delivered, and had premiums paid from New York. (ECF No. 8-1 at 26–27.) Additionally, Defendant notes the Trustee is a New York lawyer and the Trust is subject to New York law. (*Id.* at 27.) Further, Defendant argues Staten Island, where Losh's office was located, or Brooklyn, where the insured resided and where the sale and solicitation of the Policy likely took place, "are locations where a substantial part of the events giving rise to [Plaintiff's] claim . . . because [Plaintiff's] claim . . . is largely predicated on factual allegations regarding the sale and solicitation" of the Policy. (*Id.*) From this, Defendant argues this lawsuit could have been brought in the Eastern District of New York. (*Id.* at 28.) Alternatively, Plaintiff argues venue is proper in New Jersey because "this action concerns a New Jersey policy applied for by and issued for delivery to a New Jersey trust as part of a transaction that was purposefully designed to target New Jersey." (ECF No. 14 at 31.)

As noted above, in cases where a plaintiff seeks declaratory judgment to find a life

insurance policy void *ab initio* for lack of an insurable interest, "the state in which the policy was signed, and thus where [the] cause of action initially arose, is dispositive." *Lincoln Benefit*, 2017 WL 4953904, at *3 (citations omitted). Because the Complaint and record indicate the application was signed in New Jersey (ECF No. 1 ¶¶ 13–15; ECF No. 14-13 at 4–5), Plaintiff's cause of action arose in New Jersey. Accordingly, venue is proper here because the District of New Jersey is a district in "which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b).

Next, Defendant argues the private interest factors weigh in favor of transfer to the Eastern District of New York. (*Id.*) It argues the preferences of the parties "cancel one another out" since Plaintiff wants to litigate any dispute related to the Policy in New Jersey, while Defendant wants to do the same in the Eastern District of New York. (*Id.*) Defendant argues the claim originated in New York because the action concerns the life insurance policy of a New York resident "that was applied for on a medical form signed in New York," was delivered to a trust with a New York situs, and "placed by an insurance agent appointed by [Plaintiff] in New York with an address in Staten Island, New York." (*Id.*) As to the convenience of the parties and witnesses, Defendant contends these factors also favor the Eastern District of New York as a forum because "the Trust was formed in New York and the Trustee and Losh are, and/or appear to be, located in New York" and "given the New York connections that the Policy and the Trust have, many of the trial witnesses are likely to be located in New York." (*Id.* at 28–29.) Lastly, Defendant notes "there is no indication at this time as to whether records could not be produced in this forum." (*Id.* at 29.)

Defendant further argues the public interest factors weigh in favor of transfer to the Eastern District of New York. First, Defendant notes "enforceability of any judgment and administrative difficulties do not appear to be an issue in either forum." (*Id.* at 30.) Then, it argues "[a]s several

trial witnesses are likely to be located in New York, given the Policy's New York connection, it would seemingly be easier, more expeditious, and less expensive to have a trial in New York, where those witnesses are located." (*Id.* at 29.) Additionally, because of the Policy's connections to New York, New York has a much greater interest than New Jersey in hearing this action. (*Id.*)

Regarding the private interest factors, Plaintiff argues its choice of forum—New Jersey— is "entitled to great deference" while Defendant's choice of forum "merits considerably less weight." (*Id.* at 32–33.) It contends the claim arose in New Jersey because it "involved a New Jersey trust applying for a New Jersey policy issued for delivery to that New Jersey trust's New Jersey address on New Jersey application forms signed in New Jersey." (*Id.* at 33.) Plaintiff also argues Defendant would not be inconvenienced by litigating the action in New Jersey because it has hundreds of locations in New Jersey and "has litigated STOLI cases [in New Jersey] in the past without hardship." (*Id.*) Further, Plaintiff contends witnesses, like Ms. Waldman's daughter, are present in New Jersey, "the Trust that originally owned the Policy had an address in New Jersey and presumably there are still potentially relevant witnesses there." (*Id.*) Lastly, Plaintiff notes "the location of evidence has been significantly reduced as a factor due to technological advances." (*Id.* at 33–34.)

For the public factors, Plaintiff points out that Defendant concedes a New Jersey judgment would be binding against it and notes the Eastern District of New York is more congested than the District of New Jersey. (*Id.* at 34.) Further, Plaintiff argues New Jersey has a significant interest in hearing this dispute because it concerns a STOLI policy, which is against New Jersey's public policy. (*Id.*) Lastly, Plaintiff contends that since New Jersey law applies here, New Jersey courts would be more familiar applying it than New York courts. (*Id.*)

The Court denies Defendant's Alternative Motion to Transfer. The burden is on Defendant

to establish the need for transfer, and Defendant has not demonstrated that need. *See Jumara*, 55 F.3d at 879. "In most cases, the plaintiff's forum choice is 'a paramount consideration in any determination of a transfer request,' and given great weight in a motion to transfer venue." *Park Inn Int'l*, 105 F. Supp. 2d at 377 (internal citation omitted). Defendant simply notes that its choice of forum and Plaintiff's choice of forum "cancel each other out" without any argument as to why its choice should be given more support than Plaintiff's. (ECF No. 8-1 at 28.) Therefore, because Defendant has not shown that its preference deserves more weight, and the Court affords "great weight" to Plaintiff's forum choice, the Court finds these first two factors weigh in Plaintiff's favor. *See Park Inn Int'l*, 105 F. Supp. 2d at 377.

Defendant's argument that the claim arose in New York because the policy was applied for "on a medical form signed in New York," was delivered to a Trust with a New York situs, and placed by an insurance agent in New York is unpersuasive. As noted above, the court in *Lincoln Benefit* held that the state in which the policy was signed, New Jersey, is where the cause of action initially arose. 2017 WL 4953904, at *3. Because the policy was signed in New Jersey, the claim arose there. *See id*. Accordingly, this factor also weighs in Plaintiff's favor.

Both Defendant and Plaintiff raise convincing arguments as to why their preferred forums would aid convenience of the parties. (ECF No. 8-1 at 28–29; ECF No. 14 at 33.) And both parties argue their preferred forums would be more convenient for important witnesses located there. (ECF No. 8-1 at 28–29; ECF No. 14 at 33.) Therefore, the Court finds these two factors neutral.

For the last private factor, neither party makes a strong argument in their favor. Defendant argues there is no indication that there would be difficulty producing documents or records (ECF No. 8-1 at 29), while Plaintiff argues this factor has become less important due to technological changes (ECF No. 14 at 33–34.) Accordingly, the Court finds this factor neutral as

well.

Under the first public factor, Defendant concedes it would be bound by a New Jersey judgment (ECF No. 8-1 at 30), while Plaintiff argues it would not be bound by a New York judgment (ECF No. 14 at 34). The Court agrees with Plaintiff, and this factor weighs in Plaintiff's favor.

The last public factor that Plaintiff and Defendant both provide argument for are the local interests of hearing the action at home. Plaintiff argues New Jersey has a significant interest in hearing this dispute because STOLI policies are against New Jersey's public policy. (ECF No. 14 at 34.) Defendant argues New York has a greater interest in hearing this action because of the "New York connections to the Policy." (ECF No. 8-1 at 29–30.) While the Court has noted these "New York connections" were not important for personal jurisdiction, they may be important in a forum selection analysis. Therefore, this factor is also neutral.

The remaining public factors not argued by both parties include the practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases. *See Jumara*, 55 F.3d at 879–80. However, each of these factors are either neutral or weigh in Plaintiff's favor. Therefore, based on the factors the parties have argued, Defendant has not met its burden, because overall the factors fall in Plaintiff's favor.

Accordingly, Defendant's Alternative Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is **DENIED**.

**IV.**    **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss and its Alternative Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a) are **DENIED.** An appropriate order follows.


**Date: January 29, 2021**                              _/s/ Brian R. Martinotti_____
                                                        **HON. BRIAN R. MARTINOTTI**
                                                        **UNITED STATES DISTRICT JUDGE**